## BOIES & BARRETT v. VINCENT.

1. **Sale of chattels: EXECUTORY AGREEMENT.** In an action for damages for the breach of an executory agreement to sell and deliver certain cattle, the court in its finding of facts stated, that there was a sale, but the judgment given was for the damages growing out of the breach of the executory agreement : *held,* that the statement in the finding that there was a sale, instead of an executory agreement to sell and deliver, was not sufficient to justify a reversal of the judgment.

2. —— **TENDER OF PRICE.** It was further *held,* that the plaintiff might recover in such case without first having tendered the price of the cattle, if it was shown that the defendant had sold them to another.

3. —— **CONDITIONAL AGREEMENT.** If the agreement in such case was to sell upon the condition that the whole number of cattle should be found for delivery by the time agreed upon, that they were not all found at that time would be no defense in a case where defendant purposely made no effort to find them.

4. —— **CONSIDERATION.** An agreement to sell and deliver personal property finds a sufficient consideration in the promise of the other party to receive and pay for it.

5. **Measure of damages: SALE OF CHATTELS.** The rule recognized that the measure of damages for the breach of a contract for the sale and delivery of personal property, is the difference between the contract price and the market value at the time and place fixed for delivery.

Boies & Barrett v. Vincent.

## Appeal from Washington District Court.

FINDINGS OF FACT: SALE OF CHATTELS: TENDER: CONSIDERATION: MEASURE OF DAMAGES. — Action to recover damages for the neglect and refusal of the defendant to deliver, pursuant to an alleged contract, twenty-two head of cattle. No question is made upon the pleadings. The answer puts the plaintiffs upon proof of their case. The cause was tried to the court, which found the facts as follows:

"That, about the last of May, 1866, plaintiffs and defendant were residing in the town of Washington, Iowa. Plaintiffs were engaged in business and shipping cattle, and defendant was the owner of twenty-two head of steers.

"That plaintiff Boies called on defendant at his house to buy his cattle, which, at the time, ran at large about defendant's, and in the vicinity of the town, except two which were missing, but defendant supposed they could readily be found. Defendant represented to plaintiff that they were not as good as those he saw, and that he would not sell a part without the whole; he would not divide his drove.

"It was finally agreed that plaintiff could have the cattle at $50 per head for the twenty-two head.

"Up to this time nothing had been said as to the time and place of delivery, but defendant knew that plaintiffs shipped from Washington, and the cattle, except the two, were in and about the town.

"As Boies was about leaving he told defendant he wanted to ship the cattle on the next Monday or Wednesday. This bargaining was on Thursday. Defendant said they would try and have them up, that they were running out, these two of them gone, and it would be some trouble to get them together. Boies said he would

send a hand to assist, defendant replied 'All right.' At this time both parties supposed they could be got together by Monday or Wednesday. No part of the price was then paid and none of the cattle delivered, but the contract as here given was proved by the testimony of the defendant.

" On the next Monday, Boies and a hand and defendant and another went out to hunt up the cattle, and found twenty head. Boies wanted to take these then and pay for them, and take the others and pay for them when found. Defendant refused to do so, said they must all go together, if he could get them together plaintiff could have them. At this time cattle were rising on the market, and plaintiffs were anxious to get them. Defendant seemed willing to let them go if he could get them all together. But after Monday he made but little effort to get them together. The market still improved. Plaintiffs claimed the cattle. Defendant did not positively refuse to let them have them, but concluded he was not to deliver them until they were all got together.

" And thus matters stood until about the last of June, when defendant sold twenty-one head of the cattle to one McCoy, for a higher price than he was to get of plaintiffs. At the time of his sale to McCoy he hesitated about selling them, and stated that he had sold to plaintiffs provided he could find the twenty-two head. And he supposed if he went ahead and hunted up the twenty-two head and got them all together plaintiffs would claim them.

" At the time of the sale to McCoy, the twenty-one head sold to him were of the value of $1,300, the missing steer not sold to McCoy was of the value of $50.

" Upon these facts the court renders the following conclusions of law :

" That defendant did sell said cattle to plaintiff, and the contract proved by defendant is binding upon him. That plaintiffs' measure of damages is the difference between what they contracted to pay for the cattle and what they were worth at the time defendant sold them to McCoy.

" Judgment is therefore rendered in favor of plaintiffs for $250 and costs of suit.

" To which conclusions of law, and action of the court, defendant at the time excepted, and this bill of exceptions is signed, and made part of the record in this case."

The evidence is not contained in the record. Defendant appeals. The errors assigned are referred to in the opinion.

*H. & W. Scofield* for the appellent.

1. The contract was not a sale, but an agreement to sell. The cattle were running at large — they had to be gathered. Part of them were missing — these had to be found. Something remained to be done before the property passed to the purchaser. *Courtright* v. *Leonard*, 11 Iowa, 32; *Rosenthal* v. *Riley*, id. 541; *Mohn* v. *Stoner*, 14 id. 117; *McCoy* v. *Julien*, 15 id. 376; *McDonald* v. *Hewett*, 15 Johns. 349; *Joyce* v. *Adams*, 4 Seld. 291; *Shields* v. *Pettee*, 4 Conn. 122; *Russell* v. *Nicoll*, 3 Wend. 109; 5 Duer, 336–474; 4 Barb. 564; 11 id. 263; *Ward* v. *Shaw*, 7 Wend. 406; *Boyd* v. *Sifkin*, 2 Comst. 326, 327.

2. The contract being executory, before plaintiff could recover, he should prove a tender of the price. *Mohn* v. *Stoner*, 14 Iowa, 117; *Williams* v. *Healey*, 3 Denio, 363; *Gozley* v. *Price*, 16 Johns. 267; *Dunham* v. *Pettee*, 4 Seld. 508; *Lester* v. *Jewett*, 1 Kern. 453; *Greer* v. *Reynolds*, 2 Johns. 207; 2 Kent's Com. 496.

3. Proof of readiness to pay, on part of plaintiff, was not enough. He should have tendered to defendant the

price. *Cassady* v. *Bosler*, 11 Iowa, 242, and authorities cited; *Lester* v. *Jewell*, 1 Kern. 453.

4. Being unable to comply with the condition at the time fixed for delivery, defendant had the right to treat the contract as ended. 1 Parsons on Contracts, 435, 437–441; *Shields* v. *Pettee*, 4 Conn. 122; *Russell* v. *Nicoll*, 3 Wend. 112.

5. Plaintiff failing and declining to pay for all the cattle purchased or agreed to be purchased, defendant could properly and reasonably treat the contract as ended and resell. 1 Parsons on Contracts, 444; 23 Verm. 114; 1 Salk. 113.

6. Plaintiff could not require, upon demand, a part of the cattle by offering to pay for them, and the balance when found. Such was not the contract found by the court. Plaintiff should have performed his part of the contract fully before demanding or seeking to require performance on the part of defendant. 1 Wait on Law and Practice, 597; *Darner* v. *Thompson*, 2 Hill, 137; *S. C.*, 6 id. 208; 5 Wend. 253; 3 id. 112; 1 Parsons on Contracts, 437.

*Lewis & Bennett* for the appellee.

[No brief found on Reporter's file.]

DILLON, Ch. J. — I. We have felt somewhat embarrassed in this case, in consequence of the peculiar character of the findings of fact by the District Court. In material respects, the findings are not specific and definite. Thus, it is not found, in terms, at least, that a definite time was stipulated for the delivery. So it is not distinctly found when the breach first occurred. It is stated, that defendant "said"

1. SALE OF CHATTELS: executory agreement.

certain things, that "he *seemed* willing to let the cattle go," etc., "did not *positively* refuse to let plaintiffs have the cattle," etc. These are not the findings of ultimate facts, such as the statute contemplates.

With this allusion to the character of the findings of facts by the court, we proceed to notice the several errors urged by the appellant.

1. It is claimed, that "the court erred in finding there was a sale, when in fact there was only an executory agreement to sell."

*Answer.* If it be conceded, that the court found or meant to find that there was an executed sale by which the title to the cattle passed, and not simply a contract to sell, this will not justify a reversal, for the petition is sufficient to authorize a recovery of damages for a breach of an executory agreement to sell and deliver. Such was evidently the purpose of the petition, and damages for the breach of such an agreement is what was given by the judgment of the court.

II. "The court erred," it is claimed, "in finding for the plaintiff when there was no tender of the price."

2. — tender of price.

*Answer.* The subsequent sale of the cattle to another being shown, the plaintiff in an action for damages would not be obliged to tender the price of the cattle as a condition precedent to the recovery of such damages. *Wilson* v. *Little*, 2 Comst. 443, 449 ; *Collins* v. *Vandever*, 1 Iowa, 573.

III. It is urged that "the court erred in finding for the plaintiff, when the contract proven was a conditional sale or an agreement to sell upon condition the entire drove of twenty-two head was found for delivery by the time agreed upon, and the cattle were not so found — the condition thereby defeating the agreement."

3. — conditional agreement.

*Answer.* The court has not found, as a distinct and ultimate fact, that the agreement was to sell upon the condition that the entire twenty-two head should be found for delivery by the time agreed upon. What " contract was proven" other than that contained in the court's finding of facts, we do not know. The court did not find that unless the twenty-two head were found by a certain time, the defendant was under no. obligation to deliver any. It is true, certain statements are made, from which it might be inferred that plaintiff was to have all, and that defendant would not sell part without the whole. It was the defendant's duty to have made diligent efforts to find them all — a duty which the facts found by the court show the defendant did not perform and *did not want to.* He could not shut his eyes and fold his arms, and yet claim that he had in good faith lived up to the contract which he admits he made.

IV. It is next said that " there was no consideration to support the agreement." *Answer.* Under the Revision, the agreement was taken out of the statute of frauds by the testimony of the defendant. Assuming it to be established, there was a sufficient consideration to support it. Defendant's promise to sell and deliver the cattle has a sufficient consideration in the plaintiffs promise to buy and pay for them.

4. ——
consideration.

V. It is argued that "the court erred in the measure of damages." *Answer.* We admit the rule to be as contended for by the appellant, that ordinarily the measure of damages, in cases like the present, is the difference between the contract price and the market value at the time and place fixed for the delivery. The reason for the rule obviously is, that if the property is not delivered by the stipulated time the other party need wait no longer, is not bound afterward to receive it, has the money which he was to pay for it in

5. MEASURE OF
DAMAGES:
sale of
chattels.

his pocket, and with this and the advance in the price (which advance he is entitled to recover) the law supposes he can go into the market at once and purchase the article or commodity, and thereby be made whole.

From the facts reported by the court, we are unable to say that it erred in not applying this rule to the present case.

The court does not find that the contract was broken by the defendant at any definite day. The court does not find, that, on Wednesday or any other period prior to the sale to McCoy, the defendant distinctly notified plaintiffs that he would not perform, or would be unable to comply wih his contract. For aught that appears, the plaintiffs were justified for the month in holding the purchase-money in their hands in the reasonable expectation that they would obtain the cattle.

Affirmed.