In re Estate of Julia McMath.

W. B. Wyatt & Sons, Claimant.

No. 39886.

December 13, 1929.

L. W. *Fallon* and W. P. *Welch,* for appellant.

*Havens & Elston,* for appellee.

Grimm, J.—Julia McMath died June 5, 1925, and L. W. Fallon was appointed administrator of her estate on July 18, 1925, at which time he gave notice of his appointment. The estate was very small, and there were eight children and two sets of grandchildren. On August 5, 1925, L. P. Miller, one of the heirs, entered into a written contract with the claimant, W. B. Wyatt & Sons, for the erection of a certain monument to be placed at the grave of the deceased, for the agreed price of $110 on delivery, payable at Sac City, Iowa, with 8 per cent interest from date of delivery, also attorneys' fees if action should be commenced on the contract. The contract provided for retaining ownership in the Wyatt Company until the property should be paid for. The monument was erected on November

3, 1925, and on November 10, 1925, the claimant filed with the clerk of the district court a verified account and claim for the said sum of $110, with 8 per cent interest from November 3, 1925. On December 19, 1925, L. W. Fallon, administrator, indorsed the claim as follows:

"The within claim is not allowed this 19th day of December, 1925. L. W. Fallon, Administrator of said Estate."

The contract referred to is, in form, the contract of L. P. Miller with the claimant. The administrator filed his final report on March 21, 1927, which report shows that final distribution among the heirs had been made. On March 24, 1927, the appellee filed objections to the final report. Later, the administrator filed a resistance to said objection. It is claimed in argument by the appellee that the trial court, at the September, 1928, term, sustained the objection to the report, and ordered the claimant to bring the claim on for hearing and trial, and that, in accordance with said order, the appellee served notice of hearing for the November, 1928, term, at which time the decision here appealed from was made.

It appears from the record that, shortly before March 21, 1927, when the final report was filed, and nearly a year and a half after the contract was made, the administrator himself prepared a written agreement, to be signed by all of the heirs, authorizing him, as administrator, to pay the claim of W. B. Wyatt & Sons in the sum of $110 out of the funds of the estate before making distribution, and that L. P. Miller, at the request of the administrator, obtained the signatures of all of the heirs of said estate to this agreement. Notwithstanding this agreement, on January 12, 1927, the administrator wrote the claimant, offering to settle the claim by the payment of $90. Immediately thereafter, the claimant wrote the administrator, demanding payment in full, with interest. The record shows that Miller had talked with several of the heirs before he entered into the contract for the monument, and that they directed him to proceed. While there is some conflict in the record, there is sufficient evidence to warrant the court in finding that none of the heirs made any complaint to either the contract or the quality or the style of the monument, or the manner in which it was erected. The claimants assert that they had no notice of the

416

disallowance of the claim until January 12, 1927, when the administrator wrote them a letter.

I. Manifestly, Miller, simply because he was an heir, had no authority to bind either the administrator or the other heirs for the purchase price of a monument. Furthermore, the ordinary and proper procedure in the matter of procuring the erection of a tombstone is for the administrator or executor, as the case may be, to secure, in advance, the approval of the court of a contract entered into by the administrator or executor with the monument company. But it does not necessarily follow that the estate is not liable in this case. This is an action at law, in which a jury has been waived, and the finding of the trial court is to be accorded the force and effect of a jury verdict. *Harter v. Harter*, 181 Iowa 1181.

There are no unpaid creditors of the estate. This claim was filed in the estate within six months from the date of the notice of the appointment of the administrator, and, therefore, falls within Subsection 3 of Section 11970 of the Code of 1927. Inasmuch as all of the heirs had, in writing, ratified the Miller contract for the tombstone prior to the filing of the final report, the administrator should have at least presented the matter to the court, on an application for orders in reference thereto. On the contrary, the administrator assumed, notwithstanding the agreement of the heirs, to endeavor to discount the bill of the claimant and to question the payment of interest, which was clearly provided for in the Miller contract. It is true the administrator claims that he did not know of the written contract until about September, 1928, but nearly all of the heirs, including Miller, lived not far away. There seems to have been considerable conference and discussion about this contract and the payment of the claim. It would seem that the administrator would naturally inquire and ascertain the terms of the contract made by Miller with the claimant.

It does not satisfactorily appear why the administrator resisted the payment of the claim after the heirs had agreed upon payment. The agreement drawn by the administrator and signed by the heirs and filed with the administrator seems to have been lost. The administrator claims that it did not provide for the payment of interest. Miller knew that the original contract provided for the payment of interest, and it is fair

to assume that others of the heirs knew, also. While no specific findings by the court appear in the record, the court must have found that the administrator knew of the terms of the Miller contract. At all events, such is the fair inference from all the evidence. The court must have found that all the heirs ratified the Miller contract, and that before the final report and distribution.

The record has been carefully examined, and we reach the conclusion that there was abundant evidence before the trial court to warrant the court's finding. There appears no reversible error, and the cause is—*Affirmed*.

EVANS, FAVILLE, DE GRAFF, and KINDIG, JJ., concur.